morning. May it please the court, Joseph Seguenza, court petitioner. The issue presented this morning to the court is whether the IJ's adverse credibility findings were supported by substantial evidence. Petitioner respectfully submits they were not. It's of interest to note at the outset that the IJ did not make a specific demeanor finding in this case and did not make a specific finding as to past persecution. With case precedent in mind, there is a presumption that the demeanor is consistent with the I-589, and that there is a presumption of wealth of past persecution in this case. With that in mind, I'll turn, if I may, to several of the adverse credibility findings that the IJ cited in her decision. The first adverse credibility finding concerned the IJ's stated inconsistency regarding petitioner's identification of a suspected militant to the police at the time of his first arrest. And specifically, reference was made to the language in petitioner's affidavit, or I-589 declaration, rather, that he was, quote, compelled to identify the person who identified him as a militant. The IJ's concern was that he supposedly had testified differently on direct examination and when confronted on cross-examination. Petitioner submits that, in fact, his testimony is, on direct and on cross, is, in fact, consistent with his I-589. Compelled to identify those words, a reasonable presumption or inference could be that the authorities attempted to extract information from the petitioner but were unsuccessful. He was describing the motivation of the police officers in having them look at the photo array, as opposed to conceding the fact that he did, in fact, give up the person who was at the playground supposedly recruiting. Yes, Your Honor. That is petitioner's position. In fact, at AR-118, on direct examination, the director, I believe either on direct or cross, petitioner conceded that he did tell the asylum officer at the time of his interview that he recognized this particular person but did not say anything. The inference being from his testimony on direct and cross that, yes, he was shown several photographs, asked if he identified any of these people. He states that he did recognize, personally recognize, at least one of the photographs, one of the people in the photographs, but did not say anything out of fear for his safety. And with that in mind, petitioner submits that his testimony is, in fact, consistent with the declaration and other evidence in the record. It's also of interest to note that at AR-260, it's established that his application was self-prepared. He had no help from any third party, including an attorney. And this is a petitioner who has limited education, I believe 10th grade education in India, and is a lay person. And the use of language may be somewhat vague, but I believe it's still consistent with evidence in the record that he did not specifically, verbally, or in any other way, identify that person to the authorities or provide information to the authorities about these suspected militants. Are you talking now about his testimony or his asylum application? Both, Your Honor. Yes. The second inconsistency that I believe is the primary ground for adverse credibility finding by the IJ concerns the affidavit of the Sarpanch or the village elder with respect to petitioner's father and his arrest and subsequent death. Let me just go back for a minute to his application. He does make this statement, right? I was compelled to identify the person who used to appear at the playground, right? Yes. I told him nothing more than that. Isn't that a statement that, in fact, he did identify? Your Honor, in this situation, with the application for self-prepared and his limited education, I would concur, if I may, with Justice Leighton, that that describes the motivation of the authorities to bring him in and question him. His testimony in court, he stood on his testimony in court essentially that, yes, they tried to extract that information from me, but because I was so scared for my life, I didn't say anything. I didn't proffer anything. I didn't identify anybody. And compelled to ID, petitioner submits, he means they tried, but they weren't successful. All right. Thank you. With respect to the affidavit of the Sarpanch, the I.J.'s concern was whether the Sarpanch in his affidavit had referenced that he was able to secure the release of petitioner's father on both occasions of his arrest, I believe, on December 25, 1995, and again on October 21, 1996. The exact language that the I.J. referenced at AR-148, quote, I help his family for the release of late Jarmail Singh on both occasions. He died on 22-10-1996, close quote. Petitioner submits that he was able to secure the release of Jarmail Singh on both occasions of his arrest, and that the language at best, or at worst, rather, may be vague, or the affidavit may be vague or ambiguous as to whether or not he was able to secure his release, but petitioner submits that a reasonable inference or reading of that affidavit is that, yes, he did assist the family on both occasions to attempt to secure the father's release. However, he was only successful on the occasion of his first arrest. He was not successful on the occasion of his second arrest. The I.J.'s concern, I believe, was whether or not the father died subsequent to his release by the authorities on his second arrest. Petitioner was not at home at the time his father was arrested on both occasions. At that time, I believe, he was in hiding and didn't have personal knowledge of what was occurring. He had second-hand knowledge, so to speak, from a maternal uncle, I believe, who conveyed information to him. The essential point that petitioner wishes to bring to the attention of the public is that, yes, he did succeed in obtaining the release of his father at the time of his first arrest in 1995, but was unsuccessful on the occasion of his second arrest in 1996. And petitioner's testimony is consistent with that in the sense that he says that he learned that his father was in hiding from the family farm fields where he was irrigating the fields, apparently, and was never seen by the family or petitioner after that time until his body was discovered the following day in the fields. Petitioner testifies he does not know who placed the body there, but his understanding is it had to have been the authorities if, in fact, a neighbor had seen the authorities take his father away the day before in a white van. If the court finds that this affidavit is, in fact, ambiguous as to whether or not the Sarpanch was able to secure the father's release at the time of his second arrest, petitioner submits that any ambiguity should be resolved in favor of petitioner. There are just a couple of other inconsistencies that the IG alluded to, if I just may briefly highlight them. One of them has to do with the fact that the father was not seen by the authorities. Another has to do with the number of photographs that petitioner was shown. On direct examination, I believe petitioner testified that he was shown ten photographs by the authorities. When confronted whether he, on cross-examination, whether he told the AO that he was only shown two or three photographs, he denied that. He said, no, I said ten photographs to the asylum officer. It's of interest to note there's no record of the AO proceedings or the interview or the asylum officer being brought before the court to testify, so any ambiguity, if you will, should be resolved in favor of petitioner. The number of times that he was beaten or supposedly beaten when he was arrested by the police, four to five or four to six, we believe is a minor inconsistency. There's precedent in this court that the number of beatings is not the essential issue. It doesn't go to the heart of the claim, essentially. And there's case precedent, I believe, to establish that. The heart of the claim in this case, Your Honor, is that he was detained, arrested, tortured, beaten on account of religion and imputed political opinion, specifically association or suspected association with militants, and that his father was subsequently arrested and beaten and apparently murdered because of this imputed political opinion. And we believe that the evidence establishes that this case is a grant of outright asylum rather than a remand to the IJ. And if there are no further questions. I'm just pausing on your last statement about the outright grant instead of a remand. I'm sorry. I'll think about it. If I have a question, I'll ask you later. Your Honors, still Alison Drucker representing the United States. Well, as you've heard, this case involves a Sikh who's claiming persecution by the police because they suspect him of having information about dangerous militants. This is not about his religion. This is not about his political opinion. This is a police inquiry. Now, asylum was already denied three times to this individual. He applied unsuccessfully in Canada. He was unsuccessful before the administrative officer and then also in front of the immigration judge. Now, I must disagree with the characterization that was made here about the question of past persecution. In our view, the immigration judge denied this claim on two grounds, adverse credibility and then went on, and I'm looking at pages 58 and 59 of the administrative record in the IJ's decision. The IJ went on and said, even assuming arguendo, the respondent was credible. The fact remains that the police were in search of persons who were known to be militants. The court believes this was a legitimate police investigation. If it's a legitimate police investigation and yet you have torture and murder, does that negate a petitioner's right to seek asylum? Those are not legitimate police tactics. They're certainly not legitimate tactics, and we certainly think they're totally reprehensible. However, the statute does require a nexus to one of the enumerated grounds, and our position is that if this is something that's taking place, no matter how brutal, but it's not tied to an enumerated ground, it is not persecution, and it is not covered by the act. One of the, obviously we're here on a credibility finding, but you look at the five reasons given for lack of credibility, including the number of photos that he looked at and whether he was beaten with sticks, with straps, or with both. Do those go to the heart of the asylum claim? I think there's another way of looking at this, perhaps, in terms of the adverse credibility. The petitioner had basically four incidents that he pointed to that are the basis for his claim. The first one is August 94, an arrest and interrogation about his friend's relative, whether he was a militant or not. The second being September 94, where he claims that he was shot at. The third, he says, while he was away from home at Uttar Pradesh, people came looking for him. And then the fourth, about his father being arrested. Now, in two of those, the second and the third ones, he initially, at least, didn't even say that these had anything to do with his father's relative. He didn't say that they had anything to do with the police. I think throughout, he admitted that if these people were shooting at him, that they were unidentified. He didn't say that they had anything to do with the police at all. On the third one, he said initially, I think in the declaration at AR 261, I think that's the right number, that they were unidentified men. And then only later, in his testimony, he says that they were police. Now, focusing in, then, on the first and the fourth incident, I think there are a number of inconsistencies and problems that are enough to say that his evidence does not compel belief. Looking at that first incident, the arrest and interrogation about his father being arrested in August of 1994, okay, you have the question of whether or not he identified a suspect and in that sense cooperated with the police. We've already discussed that pretty fully. There's also the question about how he claims he was abused by the police. And there's also a question of how exactly he was abused. Apparently, when he was being questioned by the police, he was beaten with straps. When he was testifying, however, he said he was beaten with sticks. One would assume, if you were maltreated in this way, that you would remember pretty well what was done to you. There's also a question of the nature of the injuries that were sustained, supposedly, in this incident. He testified that he was struck on the back, the buttocks and the legs. Now, there is a letter from a clinic in the record. The testimony I just referred to is at AR 86 and 87. But there's also a letter from a clinic at AR 150. And interestingly, in that letter, the most serious injury appears to be an infected wound on his arm. So that doesn't tear up. Now, going to this fourth incident, which I admit was disturbing testimony, about his father being arrested, again, there seems to be a lot of contradictions and loose ends here and development at different stages of the record. Initially on direct, this is at AR 105, the father was beaten to death by the police and then they threw his body in the field. But then later, when he's being cross-examined, this is at AR 128, he says something, I'm not sure I have this quite verbatim, but, I only know he was arrested and the family didn't see him from the time he was arrested to when the body was found. So he doesn't seem to be really too sure about exactly what happened, what the sequence of events was. There's also the statement that's already been discussed, too, in the affidavit of the Sarpanch, that's at AR 148, about, well, that gives the impression anyway, I admit it could be read in different ways, but certainly one way it can be read is that he assisted two times in getting the father released. Now, opposing counsel has, it seems to me, admitted that that statement is somewhat ambiguous. If you do accept that, I want to point out that I don't see why, from a legal point of view, the petitioner should get the benefit of that ambiguity. The petitioner has a burden of proof. He must carry his burden of proof. Also, the immigration judge, besides alluding to this, mentioned specifically there is a death certificate in the record. That's at AR 153, and the death certificate contains no cause of death. So, again, it's really unclear exactly what happened here. Now, as I've said before, in addition to the adverse credibility issue, there's also a death certificate, and the death certificate is also this issue about even assuming credibility if he should be denied or he was properly denied asylum. And besides the nexus question, there's also the question of his failure to establish his identity. You've heard a number of other cases touching on that subject this morning. Identity is a vital issue, because the statute holds ineligible people with certain types of disabilities. People who are persecutors, people who are convicted felons. And in this case, the petitioner admits destroying his passport. That's at AR 7677. And, again, he is the one who's carrying his burden of proof. We would submit that he has not carried that burden in connection with the merits of the case. And also, I think it's been alluded earlier this morning, that that throws some additional question on his credibility. The immigration judge further noted that the police did not bother the petitioner when he was in a number of different locations in India. He was at Jalandhar briefly, he was at Uttar Pradesh for about a year and a half, and at Delhi for a year. This is AR 97-99. Apparently had no problems with the police in any of those places. And his family has remained in India unharmed, which the I.J. also noted. And that's in the record at AR 79. Lastly, if the court rejects both bases of the I.J.'s decision, then in that case it should remand, because the question of the presumption of well-founded fear was not reached by the immigration judge, especially because there's clearly evidence in the record that the petitioner could relocate safely to another part of India. Thank you, Your Honor. Thank you, Ms. Drucker. Thank you very much. All right, Mr. Segunda, you know you've used up your time, but we'll give you an opportunity for a brief rebuttal, all right? Thank you, Your Honor. I'll make it brief. I believe Your Honor had some concern about my comment about an outright grant of asylum. Petitioner would submit that the evidence in this case is so compelling and convincing and that petitioner's testimony was consistent, plausible, and well-detailed, so that a court could find a grant of asylum rather than a remand in this case, if But this is not the kind of decision, as it were, the I.J. says, and even if his testimony is credible, it's not the kind of decision that the I.J. would make. It's still insufficient to establish, you know, the qualification for asylum. Granted, I believe that's what the I.J. had decided at that time. Just briefly, Your Honor, I believe counsel had made reference to inconsistency in terms of a doctor's affidavit as to injury sustained. I would like to point out to the Court that in that particular affidavit or letter, the doctor does reference multiple lacerations or wounds on the body, and that is, in fact, consistent, Petitioner submits with his testimony that he was beaten on the buttocks, back, and legs. He did submit a birth certificate and driver's license as part of his documentary evidence to establish identification here, notwithstanding his testimony that he had to destroy his passport. With respect to his places of hiding in India, I believe reference is made that he was not bothered in India during that time by the authorities. However, Petitioner has testified and has submitted that he was in hiding, and during that time he didn't go out, he didn't go to work, he didn't go to school, and the inference is that that was the only way that he was able to be safe from the authorities. He was never taken before a judge with respect to his arrests, and again, the evidence is consistent. And I think that's all I have to say.   Mr. Dreyfus, if there are no further questions, we submit as compelling and convincing for a grant of asylum in this case. And if there are no further questions, Petitioner submits. All right. Thank you, Mr. Seguinza. Thank you again, Ms. Drucker. This case is submitted for decision, that being the last case on our calendar for the day and for the week. The panel will stand in adjournment. I will say to the government class students here, if you care to stay after the adjournment, Judge Layton has agreed to return and to answer any of your questions for a couple of minutes. So I think he'll be he'll be back in the courtroom in just a few minutes. But we'll stand adjournment at this time. Thank you. Thank you. Thank you.
judges: Tashima, Clifton, Leighton